UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Case No.: 1:25-CR-10 |
| v. | ) | |
| | ) | Judge Curtis L. Collier |
| DAVID MOSELY | ) | |

## **M E M O R A N D U M**

Before the Court is Defendant David Mosely's motion for judgment of acquittal under Rule 29(c) of the Federal Rules of Criminal Procedure. (Doc. 38.) The United States (the "Government") has responded in opposition. (Doc. 39.) The Court finds no merit in Defendant's argument and will **DENY** his motion for judgment of acquittal.

## I.  **BACKGROUND**

On January 28, 2025, Defendant was indicted on one count of being a felon in possession of a firearm on July 14, 2022, in violation of 18 U.S.C. § 922(g)(1).[1] (Doc. 2.) After pleading not guilty, Defendant was tried before a jury on August 11 and 12, 2025. The parties stipulated that Defendant already had a felony conviction and knew he had such a conviction on July 14, 2022, and that the firearm introduced into evidence at the trial traveled in interstate commerce. The only element in dispute was whether Defendant possessed the firearm.

The Government called two deputy sheriffs as witnesses. Both testified that Defendant possessed the firearm when they apprehended him on July 14, 2022, as described in more detail

---

[1] A previous indictment against Defendant for the same offense was dismissed without prejudice under the Speedy Trial Act, 18 U.S.C. §§ 3161 *et seq.* (Case No. 1:22-CR-98.)

below.  They also both identified a pistol with a magazine as the firearm Defendant had possessed on the date in question, and the firearm was introduced into evidence.

More specifically, Deputy Jeff Gouin testified to seeing the firearm in Defendant's right front pants pocket while fellow Deputy Taylor Thompson was trying to handcuff Defendant after a chase.  Deputy Gouin testified to announcing "gun"; removing the firearm from Defendant's pocket; taking out the magazine and ammunition; placing them all on the hood of a car pending Defendant's handcuffing; and ultimately locking the firearm and magazine in a police car for safekeeping.  He testified to later finding a revolver-style BB gun in a search of Defendant's vehicle, after Defendant was handcuffed and after the firearm was already locked in the police car. He testified that the handle of the BB revolver did not look like the handle of the firearm, and that the bottom of the firearm had a particular curve.

Deputy Thompson testified that he saw the firearm in Defendant's pants pocket before Deputy Gouin removed it.  Deputy Thompson testified that Deputy Gouin announced "gun" and took the firearm out of Defendant's pocket while Deputy Thompson was still trying to handcuff Defendant.

The Government introduced video footage from body cameras worn by each officer during the relevant time.  The footage depicted Deputy Gouin's announcement of "gun" and showed the firearm and magazine being placed on the hood of a car moments afterwards.  A still frame from the video showed the curved bottom of the handle of the firearm protruding from Defendant's pocket before Deputy Gouin removed it.  The footage did not show the firearm itself in the moment of its removal from Defendant's pocket.

In his closing argument, Defendant argued in part that the jury should acquit because the video had not shown the firearm actually being removed from Defendant's pocket.  Defendant also

argued the Government had not proven the item in Defendant's pocket was the firearm, rather than the BB gun.

During deliberations, the jury sent the following written communication to the Court: "Can the jury see the bottom off the gun and the magazine?  Can the marshal[] bring it to the jury room?" (Doc. 33 (capitalization omitted).)  After consultation with the parties and the Deputy U.S. Marshal in attendance, the Court allowed each of the members of the jury to hold and examine the firearm for as long as they each wished while in the jury box, with no discussion during the examination.

The jury returned a verdict of guilty on August 12, 2025.  (Doc. 34.)  Defendant filed a timely Rule 29(c) motion on August 26, 2025.  (Doc. 38.)  The Government responded in opposition on September 16, 2025.  (Doc. 39.)

## II.    STANDARD OF REVIEW

A defendant may move for a judgment of acquittal within fourteen days of a guilty verdict or the jury's discharge.  Fed. R. Crim. P. 29(c)(1).  Such a motion must be granted if "the evidence is insufficient to sustain a conviction."  *Id*. at 29(a).  In reviewing a challenge to the sufficiency of the evidence, a court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  In making its determination, the court does not make an independent judgment on the credibility of witnesses or the weight of the evidence.  *United States v. Walls*, 293 F.3d 959, 967 (6th Cir. 2002).  "Even circumstantial evidence may sustain a conviction so long as the totality of the evidence was substantial enough to establish guilt beyond a reasonable doubt."  *Id.*  A defendant challenging the sufficiency of the evidence to support a guilty verdict "bears a very heavy burden." *United States*

3

*v. Callahan*, 801 F.3d 606, 616 (6th Cir. 2015) (quoting *United States v. Jackson*, 473 F.3d 660, 669 (6th Cir. 2007)).

## III.   <u>DISCUSSION</u>

Defendant argues the evidence was insufficient because the case "was based almost solely on the testimony of two Bradley County Sheriff's deputies, . . . [y]et the bodycam footage simply did not offer conclusive and corroborating proof of [their] assertion" that Deputy Thompson removed the firearm from Defendant's possession. (Doc. 38 at 3.) Defendant cites several cases in which evidence was held to be insufficient under Rule 29. He asserts that the evidence in this case is weaker than in those cases, making acquittal appropriate.

The Government responds that both eyewitnesses testified to seeing Defendant actually possess the gun and that the video evidence substantiates their testimony, in that "the bottom of the handgrip and magazine of the firearm can be seen sticking out of the Defendant's pants in a still shot from the footage." (Doc. 39 at 3.) The Government argues that based on this evidence, "it cannot be said that no rational juror could have found that Defendant possessed the firearm." (*Id.*)

Viewing the evidence in the light most favorable to the Government, the Court concludes that a rational jury could easily have found Defendant possessed the firearm. *See Jackson*, 443 U.S. at 319. The eyewitness testimony of the two officers alone would have been sufficient for such a finding. *See, e.g.*, *United States v. Castle*, 625 F. App'x 279, 282 (6th Cir. 2015) (holding evidence that a firearm had dropped out of defendant's pants, "specifically" testimony of two officers, was sufficient despite defendant's alternative theory for the firearm's being at defendant's feet). To hold that the eyewitness testimony of the officers here was not sufficient would require

4

the Court to revisit the jury's apparent decision to find the officers' testimony credible. This is something the Court cannot do under Rule 29(c). *Walls*, 293 F.3d at 967.

Defendant has offered no legal authority for his implied assertion that the officers' eyewitness testimony is insufficient without "conclusive and corroborating proof" through video evidence. (*See* Doc. 38 at 3.) The Court is not aware of legal authority that would make corroboration necessary, let alone "conclusive" corroboration.

Moreover, as the Government argues, the video evidence did corroborate the officers' testimony. A still frame from the video showed the end of a firearm protruding from Defendant's pants pocket, just as the officers testified they saw.[2] (*See* Gov't's Trial Ex. 3.) Video footage also depicted Deputy Gouin saying "gun," getting very near Defendant, and then moving away and putting the firearm and the magazine on the hood of a car immediately afterwards. The fact that the moment of removal itself is not visible in the video because of the angles of the body-worn cameras and the movement of the officers is irrelevant.

The acquital cases on which Defendant relies do not change the Court's analysis. Defendant does not explain in what way the insufficient evidence in the cited cases "was at least as strong as [the evidence] adduced in this case." (Doc. 38 at 2–3.) In fact, none of these cases addressed questions of actual possession, whether of a firearm or anything else. The only cited decision by the Court of Appeals for the Sixth Circuit, *United States v. Joseph*, 781 F.2d 549 (6th Cir. 1986), was a false-claims case. The decisions out of other circuits concern an attempted bank

---

[2] If additional corroboration were necessary to refute Defendant's theory about the BB gun, corroboration would also exist in the testimony about the shape of the bottom of the firearm and its difference from the shape of the BB gun, the visual evidence of that shape in the still image of the item protruding from Defendant's pocket, and the jury's examination of the firearm in the jury box. As stated previously, however, corroboration is not necessary in this case.

5

robbery, drug conspiracies, and an intention to kill. *See* (Doc. 38 at 2–3 & cases cited therein.) None of these analyses considered the sufficiency of evidence a defendant possessed an item. Therefore none of them are instructive on the question before the Court.

## IV.    <u>CONCLUSION</u>

The Court finds no basis for entering a judgment of acquittal and will **DENY** Defendant's motion (Doc. 38).

**An appropriate order will enter.**

<u>/s/</u>
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**

6